**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| GEORGE I. ROUMELIOTIS, CHAPTER 7 TRUSTEE FOR THE NASH ENGINEERING COMPANY, *Plaintiff*, | ) | 3:25-CV-00999 (SVN) |
| v. | ) | |
| | ) | September 29, 2026 |
| GARDNER DENVER, INC. & G. DENVER AND CO., LLC, *Defendants*.[1] | ) | |

**ORDER GRANTING MOTION TO DISMISS**

Sarala V. Nagala, United States District Judge.

For nearly a century after its founding in 1905, The Nash Engineering Company ("TNEC") manufactured liquid ring vacuum pumps for various industrial uses. By the 1990s, TNEC had begun to be sued by individuals who claimed that the company's products had caused harm by exposing them to asbestos. Through a complex series of transactions over several years, assets belonging to TNEC were transferred to other entities.

TNEC is now undergoing Chapter 7 Bankruptcy. Plaintiff George I. Roumeliotis, TNEC's Chapter 7 Trustee, brings suit here against Defendants Gardner Denver, Inc. ("Gardner Denver") and Gardner Denver and Co., LLC ("GD&C") (collectively, "Defendants"), alleging successor liability claims and a breach of contract claim based on Defendants' alleged failure to assist TNEC in defending claims made against its insurance policies. Defendants seek to dismiss Plaintiff's action, arguing that he has sued the wrong entity, that Defendants are not successors of TNEC,

---

[1] Defendants note that they are currently named "Dovers LLC." Defs.' Memo in Supp. of Mot. to Dismiss, ECF No. 32-1 at 6. Garder Denver, Inc. converted from a corporation into a limited liability company ("LLC") on December 1, 2023, and became "G. Denver and Co. LLC." *Id.* at 13. On June 2, 2025, G. Denver and Co. LLC changed its name to Dovers LLC. *Id.* Plaintiff states he will seek to amend the complaint to identify the defendant as "Dovers LLC." Pl.'s Opp. Br., ECF No. 39 at 4 n.1. Nonetheless, the Court will refer to the Defendants (plural) as Gardner Denver and GD&C, consistent with Plaintiff's present complaint.

and, further, that there was no breach of contract. For the reasons described below, the Court GRANTS the motion to dismiss, but will permit Plaintiff leave to amend.

## I. FACTUAL BACKGROUND

The Court sets forth the allegations of the complaint, which are generally taken as true for purposes of assessing a motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### A. The Nash Engineering Company and the 2002 Transaction

TNEC's founder and members of his family were involved with the ownership and/or management of TNEC's operating business continuously between 1905 and 2002, until the operations of the business were transferred. ECF No. 1 ¶ 12. Since at least 2001, TNEC has been named as a defendant in thousands of lawsuits involving claims that its products had exposed individuals to asbestos, and at least 1,600 of these cases were still pending in 2021. *Id.* at ¶ 13–14. The liability for those asbestos exposure claims is key to what is being contested in this case.

In 2002, TNEC entered into a transaction that involved TNEC, Nash Industries, LLC ("Nash Industries"), and Mondo Acquisition LLC ("Mondo"), a subsidiary of Audax Private Equity Fund, L.P. ("Audax"). *Id.* ¶ 16. The transaction combined the business of TNEC with that of elmo vacuum technology GmbH ("Elmo"), which was a subsidiary of Siemens AG. *Id.* ¶ 15. As Plaintiff describes it, the transaction consisted of three steps occurring simultaneously: TNEC contributed substantially all of its operating assets and liabilities to Nash Industries; TNEC then contributed Nash Industries and other subsidiaries to Mondo, in exchange for a 35.75% equity interest in Mondo; and then Mondo acquired Elmo from Siemens. *Id.* ¶ 17. At the end, TNEC and Audax jointly owned Mondo, with Mondo in turn owning Nash Industries, other subsidiaries of TNEC, and Elmo. *Id.* ¶ 18.

Plaintiff alleges that Nash Industries and Mondo did business under the name "Nash Elmo." *Id.* ¶ 19.[2] The transaction documents purported to exclude product liability claims from Nash Elmo's assumption of liabilities related to TNEC's business, but Plaintiff claims that the parties to the transaction "understood that Nash Elmo would be sued and potentially held liable as TNEC's successor for claims based on asbestos and other product liabilities of TNEC." *Id.* ¶ 25. The Contribution Agreement provided that TNEC would indemnify Nash Elmo for any losses arising out of the liabilities retained by TNEC, including asbestos claims. *Id.*

B. <u>Nash Elmo Continues TNEC's Business</u>

Plaintiff alleges Nash Elmo had considerable continuity with TNEC. For instance, Plaintiff observes that Nash Elmo had "uninterrupted continuity of personnel, physical location, assets and general business operations." *Id.* ¶ 26(a). According to Plaintiff, Nash Elmo's business consisted of the entirety of TNEC's pre-sale business, along with Elmo business. *Id.* ¶¶ 19, 23. Plaintiff further contends that TNEC conducted no business operations after the transaction. *Id.* ¶ 24. It simply held real estate, which it leased to Nash Elmo, and it possessed an ownership interest in Nash Elmo. *Id.* Nash Elmo continued to employ all of TNEC's approximately 500 staff, providing at least the same salary as they had received before the transaction. *Id.* ¶ 21. Additionally, the board of Mondo,[3] which made all of the major decisions regarding the operation of Nash Elmo, was initially comprised of three Audax-appointed members and two TNEC-appointed members.

---

[2] According to Defendants, there are further complexities here. Nash Industries was renamed "nash_elmo Industries, L.L.C"; its parent, Mondo, was renamed "nash_elmo Holdings LLC." ECF No. 32-1 at 7 n.1; *id.* at 11. Defendant contends that, through a merger in 2004, a subsidiary of Gardner Denver Inc. (Neptune Holdings I, Inc.) merged into nash_elmo Holdings LLC, and only the entity "nash_elmo Holdings LLC" survived. *Id.* at 7. "The result of the transaction was that [Gardner Denver Inc.] owned nash_elmo Holdings LLC, which in turned owned Nash Elmo" (formerly known as Nash Industries). *Id.* Plaintiff's complaint does not distinguish between nash_elmo Industries and nash_elmo Holdings when it refers to "Nash Elmo." Because the complaint endeavors to trace TNEC relationships with successor companies to prove successor liability, clarity on these connections is particularly vital. The Court employs "Nash Elmo," Plaintiff's terminology, where Plaintiff has not otherwise specified a different entity.

[3] Plaintiff refers to Nash Industries, LLC, as "Operating," and Mondo as "Holding." *See id.* ¶ 16.

*Id.* ¶ 22. Further, the 120 shareholders of TNEC from before the transaction, including members of the Nash family, continued to be shareholders in Nash Elmo, retaining pre-transaction share holdings. *Id.* ¶ 26(b). TNEC's independent auditor described Nash Elmo as "successor to the operations of The Nash Engineering Company." *Id.* ¶ 23. Thus, Plaintiff contends that, rather than being a new corporate entity, Nash Elmo was effectively TNEC in a new guise.

Plaintiff alleges that on or around July 28, 2004, Nash Elmo merged into Gardner Denver, which in turn obtained "all of Nash Elmo's assets and liabilities" (the "2004 Merger"). *Id.* ¶ 28; Pl.'s Opp. Br., ECF No. 39 at 13. Plaintiff further alleges that GD&C[4] has represented in separate proceedings arising from and relating to TNEC's bankruptcy case that is a "successor to Gardner Denver, LLC, formerly known as Gardner Denver, Inc." ECF No. 1 ¶ 9. But as the Court details below, the record suggests that Nash Elmo may not simply have become a part of Gardner Denver in the manner the Plaintiff suggests.

C. <u>The Letter Agreement & Insurance Policies</u>

According to Plaintiff, Gardner Denver acquired physical possession over the historical records of TNEC, including records that could be relevant to pending asbestos claims. ECF No. 1 ¶ 48. In 2004, TNEC maintained a series of insurances policies to cover its liability on asbestos claims. *Id.* ¶ 49. In connection with the 2004 Merger, TNEC and Gardner Denver entered into a Letter Agreement dated September 1, 2004, providing that Gardner Denver would be a direct beneficiary of TNEC's surviving indemnification obligations with respect to the insurance policies. *Id.* ¶¶ 49, 51. The Letter Agreement requires Gardner Denver to provide TNEC with assistance in the form of providing access to records and data required by TNEC to maintain the

[4] According to Plaintiff, GD&C was formed in connection with a transaction between Ingersoll Rand and an entity known as Delictus, a "leading, institutionally capitalized corporate liability acquisition platform that specializes in acquiring and managing long-tail legacy corporate liabilities." ECF No. 1 ¶ 10.

insurance policies. *Id.* ¶ 53. Although Gardner Denver assisted TNEC in this manner for many years following the 2004 Merger, it became less cooperative beginning in about 2016. *Id.* ¶¶ 55–56. In particular, according to Plaintiff, Gardner Denver failed to produce to TNEC documents that TNEC was, in turn, required to produce in discovery in a series of asbestos cases being litigated in Hawaii, resulting in TNEC suffering damages in the form of settling the Hawaii cases for "substantially more" than it otherwise would have and expending significant sums to obtain responsive documents from its historical records. *Id.* ¶¶ 57–63.

D. The Asbestos Actions & This Suit

Plaintiff alleges that TNEC remained in existence from 2008 through its Chapter 7 filing in 2021 "for the limited purpose of responding to and resolving asbestos liability claims." *Id.* ¶ 29. The total financial exposure for remaining TNEC asbestos claims is likely more than $251 million. *Id.* ¶ 30. In certain of the pending asbestos suits, individual plaintiffs asserted claims against Gardner Denver for successor liability for asbestos claims arising from TNEC's products. *Id.* ¶ 32. Gardner Denver has denied any successor liability in those cases. *Id.* The issue has not been litigated fully because successor liability claims have been stayed pursuant to the automatic stay arising from TNEC's bankruptcy filing. *Id.* ¶ 32. The successor liability claims are now property of the bankruptcy estate, and the Trustee is the only party authorized to prosecute such claims. *Id.* ¶ 33.

The complaint alleges three claims. In Count One, the Trustee seeks a declaration "(a) that Gardner Denver, Inc. is the legal successor to TNEC and, as such, is liable for the total amount of all damages and defense costs arising from all pending and future TNEC Asbestos Claims and (b) that, at such time as any order is entered in the bankruptcy case allowing any TNEC Asbestos Claim against the Debtor's bankruptcy estate, Gardner Denver shall immediately pay the full

amount of each such claim to the Trustee." ECF No. 1 at 16, ¶ 1. The Trustee also seeks judgment in Count Two against Defendants "in any amount equal to the total amount" of the TNEC asbestos claims against the Debtor's bankruptcy estate, plus interest." *Id.* ¶ 2. Finally, the Trustee asserts TNEC is entitled to damages based on Gardner Denver's alleged breach of the September 2004 Letter Agreement. *Id.* ¶ 3.

The Court previously denied Gardner Denver's motion to enforce the standing order of reference for the District of Connecticut, which automatically refers bankruptcy-related case to the bankruptcy courts for this District. *See* Order, ECF No. 47. Thus, the case remains pending in District Court.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a case or cause of action for failure to state a claim upon which relief can be granted. When determining whether a complaint states a claim upon which relief can be granted, highly detailed allegations are not required, but the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. This plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.* In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation omitted).

The Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008), and "a formulaic recitation of the elements of a cause of action will not do," *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Ultimately, determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## III. MATERIALS PROPERLY CONSIDERED FOR MOTION

In support of their motion to dismiss, Defendants have submitted several exhibits, including the 2004 Merger Agreement, the limited liability agreement of Gardner Denver Nash LLC, and numerous other documents. *See* Baer Decl., ECF No. 32-2 (describing attached exhibits). Generally, when considering a motion to dismiss under Rule 12(b)(6), the Court may not consider "matters outside the pleading" without converting the motion into one seeking summary judgment under Rule 56. *See* Fed. R. Civ. P. 12(d). But there are exceptions to this general rule: the Court may consider materials that are incorporated by reference into the complaint; integral to the complaint; or of which the Court may take judicial notice. *See Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 156–157 (2d Cir. 2006); *Perry v. NYSARC, Inc.*, 424 F. App'x 23, 25 (2d Cir. 2011) (noting that there is "a narrow exception to this rule for factual assertions that are contradicted by the complaint itself, by documents upon which the pleadings rely, or by facts of which the court may take judicial notice").

Here, Defendants contend the Court may rely on the exhibits they have submitted for purposes of deciding their motion. With respect to the 2004 Merger Agreement and the Letter

Agreement Defendants are said to have breached, the Court agrees.[5] First, Plaintiffs' complaint relies heavily on the effects of the 2004 Merger, as a bridge connecting Nash Elmo to Defendants. Plaintiff asserts that, "[p]ursuant to a Merger Agreement dated on or about July 28, 2004, Nash Elmo was merged into Gardner Denver. ECF No. 1 ¶ 28. It was this merger which Plaintiff believes "resulted in Gardner Denver becoming liable for all liabilities of Nash Elmo existing on the date of the merger." *Id.* ¶ 37. Second, Plaintiff also explains that side agreements, including the Letter Agreement on which he bases his breach of contract claim, were incorporated into the 2004 Merger. *Id.* ¶ 50. But Plaintiff has attached neither the 2004 Merger Agreement nor the Letter Agreement to his complaint.[6] Because both documents are relied upon heavily by Plaintiff and are therefore integral to the complaint, Defendants can properly submit the documents for consideration on their motion to dismiss, because "[P]laintiff should not so easily be allowed to escape the consequences of [his] own failure." *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991); *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). The Court also considers relevant public securities findings, of which it may take judicial notice. *See In re Morgan Stanley Info. Fund Sec. Litig.*, 592 F.3d 347, 354 n.5 (2d Cir. 2010); *In re Farfetch Limited Sec. Litig.*, 802 F. Supp. 3d 652, 674 (S.D.N.Y. 2025).

Plaintiff does not meaningfully respond to Defendants' assertion that the Court may consider the documents. Thus, the Court will consider them in assessing Defendants' motion.

---

[5] As the Court does not rely on the other exhibits submitted by Defendants except where it is appropriate take judicial notice of them, it need not consider whether they are properly considered when assessing the motion to dismiss.

[6] Plaintiff has submitted the Letter Agreement with his opposition to Defendants' motion to dismiss. *See* Letter Agreement, ECF No. 39-1 at 2–6.

## IV. DISCUSSION[7]

A. Counts One and Two: Declaratory Judgment for Successor Liability and Recovery of Amount of TNEC Claims from Gardner Denver and its Successors

First, the Court concludes that Counts One and Two, each premised on the claim that Defendants are liable to TNEC on a theory of successor liability, must be dismissed.

In Count One, Plaintiff contends that he is entitled to a declaratory judgment that Defendants are the successors of TNEC, and liable for TNEC asbestos claims. ECF No. 1 ¶¶ 36–42. And in Count Two, Plaintiff seeks to recover from Gardner Denver, its successor GD&C, and any affiliated and related entities who are successors to TNEC, of the full amount of TNEC's asbestos claims against TNEC's bankruptcy estate. *Id.* ¶ 46. To state a cognizable claim for each of these counts, Plaintiff would have to plausibly allege that Defendants are, in fact, the successors in interest of TNEC. He fails to do so.

Both Connecticut and New York follow the "general common law rule against successor corporate liability," under which a corporation that "purchases all the assets of another company does not become liable for the debts and liabilities of its predecessor unless one of a few exceptions—including that the purchase is a "mere continuation" of the seller—applies. *See Call Ctr. Tech's, Inc. v. Grand Adventures Tour & Travel Pub. Corp.*, 635 F.3d 48, 52 (2d Cir. 2011) (citing *Altman v. Motion Water Sports, Inc.*, 722 F. Supp. 2d 234, 240 (D. Conn. 2010)); *New York v. Nat'l Service Indus., Inc.*, 460 F.3d 201, 209 (2d Cir. 2006). The prerequisite to invoking the

[7] Defendants contend that New York law governs Plaintiff's successor liability claims in Counts One and Two, based on the choice of law provision in the 2004 Merger Agreement. *See* ECF No. 32-1 at 16–18. Plaintiff suggests that Connecticut law applies, but urges the Court to defer the choice of law analysis to a later stage in the case. *See* ECF No. 39 at 17–19. It is true that choice of law determinations are fact-intensive inquiries that are generally "premature to resolve at the motion-to-dismiss stage." *Bristol-Meyers Squibb v. Matrix Laby's Ltd.*, 655 F. App'x 9, 13 (2d Cir. 2016) (summary order) (citing cases). And because Defendants do not assert that there is an outcome-determinative conflict between New York and Connecticut law on relevant issues, the Court need not decide what law applies at this stage. Instead, it applies the law "common to the jurisdictions." *See Lumbermens Mut. Cas. Co. v. Dillon Co.*, 9 F. App'x 81, 83 (2d Cir. 2001) (summary order) (citing *Haymond v. Statewide Grievance Comm.*, 45 Conn. Supp. 481, 488–89 (Conn. Super. Ct. 1997), *aff'd*, 247 Conn. 436 (1998))).

exceptions to the rule against successor liability, including the "mere continuation" of the seller exception, is that the alleged successor has, in fact, purchased the assets of another company. *See Chen v. L&L New Beginnings LLC*, No. 21-CV-11225 (VEC), 2022 WL 2306946, at *2 (S.D.N.Y. June 27, 2022) (noting that the "predicate" for application of the exceptions to the general rule "is a purchase of assets by the putatively-liable entity").

Examination of the 2004 Merger agreement makes clear that Plaintiff has failed to establish that predicate. While Plaintiff alleges that "Nash Elmo was merged into Gardner Denver" through the 2004 Merger, ECF No. 1 ¶ 28, the transaction was not as simple as Plaintiff makes it out to be. The 2004 Merger Agreement actually provides that Neptune Holdings I, defined in the Agreement as a wholly owned subsidiary of Gardner Denver Inc. and titled the "Merger Sub," was merged with and into nash_elmo Holdings LLC (the "Company" under the Agreement); that the separate existence of Neptune Holdings I ceased, and nash_elmo Holdings LLC continued in existence as a wholly owned subsidiary of Gardner Denver, Inc. (defined in the agreement as the "Buyer"). ECF No. 32-8 at 9. Thus, the "surviving company" following the 2004 Merger was nash_elmo Holdings LLC, not Gardner Denver, as Plaintiff contends (without citation). *See* ECF No. 39 at 13.

According to Defendants, "Nash Elmo Industries" actually owned TNEC's legacy assets, and nash_elmo Holdings LLC, is the parent company of Nash Elmo Industries. *See* ECF No. 32-1 at 18 n.10. And as provided in a public filing with the Securities and Exchange Commission, of which the Court takes judicial notice, nash_elmo Industries, L.L.C. was renamed "Gardner Denver Nash LLC" in 2005, *see* Cert. of Amendment to Cert. of Formation of Nash_Elmo Industries, L.L.C., ECF No. 32-3, and Gardner Denver Nash LLC is now a subsidiary of Ingersoll Rand, *see* Ingersoll Rand Inc. Form 10-K, ECF No. 32-4 at 115.

Thus, it is far from clear that the straightforward through-line Plaintiff alleges between "Nash Elmo" and Gardner Denver is accurate. Plaintiff's conclusory allegation that "Nash Elmo was merged into Gardner Denver," ECF No. 1 ¶ 28, is unsupported by specific facts that plausibly allege the connection Plaintiff seeks to have the Court infer. Instead, the 2004 Merger Agreement provides that the surviving entity from the merger was nash_elmo Holdings LLC, and Nash Elmo was not simply "merged into Gardner Denver." *Id.* Where "a conclusory allegation in the complaint" is contradicted by a document that the Court may properly consider on a motion to dismiss, "the document controls and the allegation is not accepted as true." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 147 (2d Cir. 2011); *see also Speer v. United States Nat'l Bank*, No. 3:22-CV-668 (SRU), 2023 WL 2573312, at *2 (d. Conn. Mar. 20, 2023). Here, the Court cannot simply accept Plaintiff's representation from the complaint that Nash Elmo merged into Gardner Denver and thus that Gardner Denver succeeds to TNEC's liabilities, given that the 2004 Merger Agreement appears to contradict such a straightforward connection.

That there is a connection between Gardner Denver and the entities that succeeded TNEC seems clear from the record, but that relationship is not as simple as TNEC becoming Nash Elmo and then Nash Elmo being merged into Gardner Denver, as Plaintiff would have it seem. Although Plaintiff sufficiently alleges that TNEC effectively created some Nash Elmo entity—the particular identity of which remains somewhat unclear to the Court—and that that entity operated as effectively a continuation of TNEC, the 2004 Merger created a rupture of continuity for which Plaintiff has not fully accounted in his complaint. While even Defendants admit that at least one entity with the words "Nash" and "Elmo" in its name held TNEC's legacy assets ("nash_elmo Industries"), it appears Plaintiff has not sued the correct Defendant in the present complaint.

The Court rejects Plaintiff's counterarguments. First, while Plaintiff is correct that the Court's task on a motion to dismiss is to assess the sufficiency of the pleading and not the merits of Plaintiff's claims, the Court cannot find that Plaintiff's *pleading* is sufficient to state successor liability claims when Plaintiff simply gets his facts wrong as to the particulars of the 2004 Merger. Second, the Court cannot reach Plaintiff's argument that he has adequately pleaded Defendants are a "mere continuation" of TNEC without some basis to conclude that Plaintiff has correctly named the entity or entities that held legacy TNEC assets. The Court is sympathetic to Plaintiff's concern that Defendants have "gone through a litany of opaque transactions, name changes, formation changes and mergers," ECF No. 39 at 21, but that does not absolve Plaintiff of the obligation to do his homework—as best as possible before formal discovery commences—and trace the transactions through to the end, so that the appropriate corporate entity or entities are named as Defendants. This is not a case of a plaintiff mislabeling the right defendant; it is one of a plaintiff naming the wrong defendant. *Cf. Datskow v. Teledyne, Inc., Continental Products Div.*, 899 F.2d 1298, 1301 (2d Cir. 1990). In sum, Plaintiff cannot merely fall back on his conclusory allegation that Gardner Denver "acquired, held, and succeeded to all of Nash Elmo's assets and liabilities," including Nash Elmo's successor liability for TNEC's asbestos claims. *See* ECF No. 1 ¶ 28.

Thus, the Court dismisses Counts One and Two, but will permit Plaintiff to amend his complaint to name the proper Defendant(s).

B. Count Three: Breach of Contract

The Court also dismisses Plaintiff's breach of contract claim in Count Three, which alleges that Gardner Denver failed to comply with obligations set forth in a 2004 Letter Agreement to assist TNEC in connection with maintaining various insurance policies.

As noted above, the Letter Agreement makes Gardner Denver a beneficiary of TNEC's surviving indemnification obligations with respect to certain liabilities covered under insurance policies. *See* ECF No. 1 ¶¶ 49–51. In relevant part, the Letter Agreement stated: "**Assistance**. Upon reasonable request, [Gardner Denver] covenants and agrees to assist TNEC and [The Hartford] and any other applicable carrier in defending claims under the Insurance Policies including, where necessary, providing access to records and data or other available information with respect to claims required by TNEC to maintain the Insurance Policies." *Id.* ¶ 53; ECF No. 39-1 at 3 ("Assistance Clause"). Plaintiff alleges Gardner Denver breached this provision by, among other things, failing to produce historical TNEC records when called upon by TNEC and its insurers as they were defending against asbestos claims. ECF No. 1 ¶¶ 54–60.

The parties appear to agree that New York law governs Count Three. *See* ECF No. 32-1 at 23 (arguing New York law applies because the Letter Agreement was entered into in connection with the 2004 Merger agreement, which is governed by New York law); ECF No. 39 at 24 (citing New York law related to conditions precedent in a contract). Under New York law, the elements of a breach of contract claims are (1) the existence of an agreement; (2) adequate performance of the contract by the plaintiff; (3) breach of contract by the defendant; and (4) damages. *See Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004); *see also Beautiful Jewellers Private Ltd. v. Tiffany & Co.,* 438 Fed. App'x. 20, 21–22 (2d Cir. 2011).

First, the Court agrees with Gardner Denver that the complaint is insufficient because it does not adequately plead that Gardner Denver breached its contractual obligations. The Letter Agreement provides that, "[u]pon reasonable request," Gardner Denver would assist TNEC and its insurance carries by providing access to records. ECF No. 39-1 at 3. The complaint does not

allege that TNEC actually requested such assistance. The Court views the "reasonable request" by TNEC as a condition precedent to performance of the contract by Gardner Denver.

A condition precedent is "an act or event, other than a lapse of time, which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises." *Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*, 86 N.Y.2d 685, 690 (1995) (citing John D. Camari & Joseph M. Perillo, Contracts § 11-2, at 438 (3d ed)). When the language of a condition is "doubtful," New York courts will interpret it as "embodying a promise or constructive condition rather than an express condition." *Id.* at 691. Although Plaintiff endeavors to argue that the language "[u]pon reasonable request" is not sufficiently specific to create a condition precedent, the Court disagrees. Defendants' cited authorities support interpreting this phrase as sufficiently precise. *See State Farm Fire & Cas. Co. v. Atl. Diagnostic, L.L.C.,* 82 Misc. 3d 1229(A), 208 N.Y.S.3d 481 (Table) (Sup. Ct. N.Y. Cnty. 2024) (holding that submission to examinations under oath "upon the insurer's reasonable request" constitutes a condition precedent to insurance coverage obligation under contract); *Nationwide Affinity Ins. Co. of Am. v. Jamaica Wellness Med., P.C.*, 89 N.Y.S.3d 498, 502 (4th Dep't 2018) (recognizing that provision of an examination of under oath "as may be reasonably required" constitutes a condition precedent).

In any event, Plaintiff does not allege that TNEC made a request but that there was a dispute over whether the request was reasonable, such that any potential ambiguity in the word "reasonable" would be implicated here; there is simply no request referenced in the complaint whatsoever, whether reasonable or not. For instance, Plaintiff does not allege that TNEC requested assistance from Gardner Denver in complying with its discovery obligations in the Hawaii asbestos suits. *See* ECF No. 1 ¶ 57–58. The Court cannot infer that TNEC made a reasonable request from Plaintiff's allegations in paragraphs 55 and 56 of the complaint, which merely allege that Gardner

Denver became "less cooperative" beginning in about 2016. *Id.* ¶¶ 55–56. And absent a reasonable request by TNEC for Gardner Denver's assistance, Gardner Denver had no contractual obligation to provide such assistance.

In so holding, however, the Court rejects Gardner Denver's argument that the Assistance Clause of the Letter Agreement does not require it to "identify" or "produce" documents. Such a reading is at odds with the language of the clause, as there appears to be little difference between "providing access to records" and "producing" them. *See* ECF No. 39-1 at 3 (requiring Gardner Denver to "provid[e] access to records and data or other available information with respect to claims required by TNEC to maintain the Insurance Policies"). At the very least, Gardner Denver's argument evades the spirit of the provision, which obligates Gardner Denver to *assist* TNEC in providing access to TNEC's historical records, which were unavailable to TNEC.

In light of its conclusion that Plaintiff has failed to allege that it complied with a condition precedent within the Assistance Clause, and because it will allow Plaintiff to amend this claim, the Court does not reach Gardner Denver's argument that Plaintiff fails to adequately plead that TNEC suffered damages caused by Gardner Denver's alleged breach. *See Nat'l Market Share, Inc. v. Sterling Nat'l Bank*, 392 F.3d 520, 525 (2d Cir. 2004) (explaining that "[c]ausation is an essential element of damages in a breach of contract action; and, as in tort, a plaintiff must prove that a defendant's breach *directly and proximately caused* his or her damages").

## V. CONCLUSION

For the reasons described herein, Defendants' motion to dismiss Plaintiff's complaint, ECF No. 39, is GRANTED. Plaintiff may file an amended complaint by October 20, 2026. If Plaintiff fails to file an amended complaint by that date, judgment will be entered for Defendants and this

case will be closed.

**SO ORDERED** at Hartford, Connecticut, this 29th day of September, 2026.

*/s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE